PEOPLE v THOMPSON

Docket No. 318128. Submitted June 10, 2015, at Lansing. Decided March 29, 2016, at 9:00 a.m.

Jackie Thompson pleaded no contest in the Clinton Circuit Court to one count of first-degree criminal sexual conduct, MCL 750.520b(1)(b)(*ii*). Defendant was charged after his stepdaughter accused him of sexually abusing her over a period of approximately two years. In pleading no contest, defendant agreed that the court, Michelle M. Rick, J., could use the police report to establish a factual basis for the plea. Defendant pleaded no contest specifically with regard to a sexual assault that occurred on February 24, 2013. At defendant's sentencing, the parties disputed whether defendant should be assessed 50 points for Offense Variable (OV) 7, MCL 777.37, which concerns aggravated physical abuse. The court determined that a score of 50 points for OV 7 was appropriate because defendant had engaged in sadism. In support of that conclusion, the court cited the victim's allegations in the police report indicating that at various points in time during the two years of abuse, defendant had engaged in conduct including putting a BB gun to her head, threatening her life, and spanking her with a belt that left marks. The court sentenced defendant within the guidelines to a term of imprisonment of 15 to 40 years. The Court of Appeals denied defendant's delayed application for leave to appeal, but the Supreme Court remanded the case to the Court of Appeals for consideration, as on leave granted, of whether defendant's conduct with the victim before the commission of the sentencing offense could be considered when scoring OV 7. 497 Mich 945 (2014).

The Court of Appeals *held*:

Offense variables are properly scored by giving consideration to the sentencing offense alone except when the statutory language of a particular offense variable specifically provides otherwise. The language of OV 7 requires the assessment of 50 points when a victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense. OV 7 does not specifically provide that a sentencing court may look outside the

sentencing offense to past criminal conduct. Therefore, when scoring OV 7, a sentencing court may only consider conduct that occurred during the sentencing offense. In this case, the trial court assessed 50 points for OV 7 in light of conduct engaged in by defendant throughout the two-year course of the sexual abuse instead of confining its examination to conduct occurring during the sexual assault on February 24, 2013. Defendant's conduct before the sexual assault on February 24, 2013, regardless of its deplorability, did not relate forward to the sentencing offense; the prosecution, in negotiating the plea bargain, had chosen to dismiss charges related to the alleged numerous criminal offenses of sexual assault occurring before February 24, 2013. The record was such that it was impossible to discern whether one or more, or none, of the horrific acts relied on by the trial court in scoring OV 7 took place on February 24, 2013. Accordingly, a preponderance of the evidence did not support the trial court's assessment of 50 points under OV 7.

Reversed and remanded for resentencing.

RONAYNE KRAUSE, P.J., dissenting, would have affirmed, concluding that the majority read the controlling caselaw too narrowly. Conduct that occurs at a different time from the sentencing offense may be considered when scoring an offense variable as long as that conduct pertains to the sentencing offense. Conduct may relate to multiple offenses and need not chronologically overlap the sentencing offense in order to determine an OV score. In situations involving serial sexual or physical abuse, the perpetrators often control their victims through threats and manipulations intended to affect the victim's future behavior. It does not make sense to treat one interaction as separate from and irrelevant to subsequent interactions. Acts of extraordinary brutality or terror during any particular act of abuse inherently pertain to future acts of abuse perpetrated against the same victim. Defendant unquestionably engaged in conduct designed to increase the victim's fear and anxiety during the sentencing offense, and the trial court properly assessed 50 points under OV 7.

SENTENCES — SENTENCING GUIDELINES — OFFENSE VARIABLES — SCORING OFFENSE VARIABLE 7.

Under the sentencing guidelines, offense variables are properly scored by giving consideration to the conduct underlying the sentencing offense alone unless the statutory language of a particular offense variable specifically provides otherwise; the language of Offense Variable (OV) 7 requires the assessment of 50

points when a victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense; when scoring OV 7, a sentencing court may only consider conduct that occurred during the offense for which the defendant is being sentenced (MCL 777.37).

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Charles D. Sherman*, Prosecuting Attorney, and *Brian A. Ameche*, Assistant Prosecuting Attorney, for the people.

*Ronald D. Ambrose* for defendant.

Before: RONAYNE KRAUSE, P.J., and MURPHY and SERVITTO, JJ.

MURPHY, J. Defendant pleaded no contest to one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b)(*ii*) (sexual penetration and victim at least 13 but less than 16 years of age and related to the defendant). He was sentenced to a prison term of 15 to 40 years. Defendant appeals his sentence, challenging the scoring of Offense Variable (OV) 7, MCL 777.37. We reverse and remand for resentencing.

Defendant pleaded no contest to an act of digital-vaginal penetration involving his stepdaughter. At defendant's plea hearing, the court indicated that it would rely on the police report in support of the factual basis for the no-contest plea. The police report reflected that the victim was 13 years old at the time the report was prepared and that, according to the victim, defendant had been sexually abusing her at least twice a week for approximately two years. The police report further provided that the victim had described multiple instances of digital-vaginal penetration, anal in-

tercourse, and various acts of sexual contact.[1] In the police report, and in an attached written statement by the victim, reference was made to an incident in which defendant put a BB gun to the victim's head and threatened to kill her if she did not perform a sexual act. The police report also alluded to instances in which defendant pulled the victim's hair, struck her buttocks, threatened her life if she said anything about the sexual abuse, and hit her with a belt buckle, resulting in bruises on numerous occasions. In the victim's statement, she asserted that defendant had threatened her life "many times." Medical documents attached to the police report indicated that defendant once bit the victim on one of her breasts, leaving a scar. The police report noted that the last incident of sexual abuse occurred on February 24, 2013. Defendant pleaded no contest specifically with respect to the sexual assault that occurred on February 24, 2013, and not in regard to any of the prior sexual abuse.[2]

At defendant's sentencing, the prosecutor argued that defendant should be assessed 50 points for OV 7, which is the proper score when "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety

---

[1] The police report included a section regarding defendant's interview by police. The report stated, "Then in further talking to [defendant] and getting further signs of deception," defendant "did admit that he did touch [the victim's] vaginal area and that his right hand middle finger did go inside her vagina . . . ."

[2] We note that the victim was 13 years old on February 24, 2013, having turned 13 in December 2012. During most of the period in which the sexual abuse allegedly occurred, she was under the age of 13, and had defendant been convicted of CSC-I in relation to an act of penetration taking place when the victim was less than 13 years old, defendant would have faced a mandatory minimum sentence of 25 years' imprisonment. See MCL 750.520b(2)(b).

a victim suffered during the offense[.]"[3] MCL
777.37(1)(a). The only other potential score for OV 7 is
zero points. MCL 777.37(1)(b). Defendant argued that
a score of zero points was proper, claiming that his
conduct did not rise to the level that would justify a
score of 50 points. The trial court, which now had the
benefit of the presentence investigation report (PSIR),
which essentially echoed the police report and reiter-
ated the facts previously discussed in this opinion,
assessed 50 points for OV 7, ruling:

> [T]he Court takes note that the victim chronicled for the
> Clinton County Sheriff's Office the duration of the sexual
> abuse that . . . she suffered at the hands of the Defen-
> dant, which does include the scar to her breast, as well as
> anal intercourse, putting a B-B gun to her head, pulling
> her hair, threatening her life if she said anything, and
> that he had spanked her with a belt that left marks on
> her in the past. Those items the Court is satisfied
> constitute sadism as defined in the instructions to O-V
> 7 . . . .

The parties also argued over the scoring of other
OVs that are not relevant to this appeal, including OV
13, MCL 777.43 (continuing pattern of criminal be-
havior). The minimum guidelines range for defen-
dant's sentence was ultimately set at 108 to 180
months. See MCL 777.62. The trial court imposed a
minimum sentence at the very top end of the guide-
lines range, 180 months (15 years), with the maxi-
mum sentence being set at 40 years' imprisonment.
Defendant filed a delayed application for leave to
appeal, challenging the scoring of OV 7 and OV 13.
Defendant argued that OV 7 was improperly scored at
50 points, given that the trial court considered con-

---

[3] "Sadism" is statutorily defined as "conduct that subjects a victim to
extreme or prolonged pain or humiliation and is inflicted to produce
suffering or for the offender's gratification." MCL 777.37(3).

duct related to past sexual abuse, instead of limiting its examination to conduct directly pertaining to the sexual assault on February 24, 2013, which was the sentencing offense. This Court denied the application, *People v Thompson*, unpublished order of the Court of Appeals, entered December 3, 2013 (Docket No. 318128), and defendant then filed an application for leave to appeal in the Michigan Supreme Court. Our Supreme Court denied the application with respect to defendant's arguments concerning OV 13, but in regard to OV 7, the Court ruled:

> Pursuant to MCR 7.302(H)(1), in lieu of granting leave to appeal, we remand this case to the Court of Appeals for consideration, as on leave granted, of whether the conduct of the defendant with the victim prior to the commission of the sentencing offense may be considered when scoring Offense Variable 7, and if so, what evidence may support that scoring. MCL 777.37; *People v McGraw*, 484 Mich 120[; 771 NW2d 655] (2009). [*People v Thompson*, 497 Mich 945 (2014).]

Under the sentencing guidelines, a trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013); *People v Rhodes (On Remand)*, 305 Mich App 85, 88; 849 NW2d 417 (2014). " 'Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred.' " *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012) (citation omitted). This Court reviews de novo "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute . . . ." *Hardy*, 494 Mich at 438; see also *Rhodes*, 305 Mich App at 88. When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a

PSIR. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012).[4]

In the remand order, the Supreme Court directed our attention to its decision in *McGraw*, 484 Mich 120, wherein the Court stated and held:

> This case involves further analysis of the issue presented in *People v Sargent*[, 481 Mich 346; 750 NW2d 161 (2008)]. There we held that offense variable (OV) 9 [number of victims] in the sentencing guidelines cannot be

---

[4] We note that if the appropriate score for OV 7 is zero points, the guidelines range for defendant's minimum sentence would be 81 to 135 months. MCL 777.62. Defendant was given a minimum sentence of 180 months. When a defendant properly preserves a claim that a scoring error was made and the guidelines range is altered in any way because the scoring error was actually made by the sentencing court, remand for resentencing is ordinarily required, even when the minimum sentence imposed falls within the altered guidelines range. *People v Francisco*, 474 Mich 82, 89-91; 711 NW2d 44 (2006). In this case, while defendant challenged the trial court's scoring of OV 7, he did not challenge the assessment of 50 points on the ground that he now raises on appeal for the first time, so his current argument was not properly preserved. See *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). However, because, as held and explained later in this opinion, the appropriate guidelines range is indeed 81 to 135 months, and because the 180-month minimum sentence actually imposed falls entirely outside of that range, defendant is permitted to seek appellate relief despite the lack of preservation. *Id.* at 312 ("Because defendant's sentence is outside the appropriate guidelines sentence range, his sentence is appealable under [MCL 769.34(10)], even though his attorney failed to raise the precise issue at sentencing, in a motion for resentencing, or in a motion to remand."). The *Kimble* Court explained that the plain-error test still had to be applied, but it easily found plain error that prejudiced the defendant and seriously affected the fairness, integrity, and public reputation of the judicial proceedings. *Id.* at 312-313. The Court stated that "[i]t is difficult to imagine what could affect the fairness, integrity and public reputation of judicial proceedings more than sending an individual to prison and depriving him of his liberty for a period longer than authorized by the law." *Id.* at 313. Considering that defendant's 180-month minimum sentence is nearly four years longer than the top end of the appropriate guidelines range, i.e., the sentencing period authorized by law, the plain-error test is satisfied.

scored using uncharged acts that did not occur during the same criminal transaction as the sentencing offense. Today we decide whether the offense variables should be scored solely on the basis of conduct occurring during the sentencing offense or also using conduct occurring afterward.

We hold that a defendant's conduct after an offense is completed does not relate back to the sentencing offense for purposes of scoring offense variables unless a variable specifically instructs otherwise. Therefore, in this case, defendant's flight from the police after breaking and entering a building was not a permissible basis for scoring OV 9. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the circuit court for resentencing. [*McGraw*, 484 Mich at 121-122 (citation omitted).]

In *McGraw*, the defendant had pleaded guilty to multiple counts of breaking and entering a building in exchange for the dismissal of other charges, including fleeing and eluding police officers. *Id*. at 122-123. As part of the Court's reasoning in support of its holding, it observed:

We conclude that the Court of Appeals erred by considering the entire criminal transaction and using defendant's conduct after the crime was completed as the basis for scoring OV 9. Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable. OV 9 does not provide for consideration of conduct after completion of the sentencing offense. Therefore, it must be scored in this case solely on the basis of defendant's conduct during the breaking and entering. If the prosecution had wanted defendant to be punished for fleeing and eluding, it should not have dismissed the fleeing and eluding charge. It would be fundamentally unfair to allow the prosecution to drop the fleeing and eluding charge while brokering a plea bargain, then resurrect it at sentencing in another form. [*Id*. at 133-134.]

At the conclusion of its opinion, the *McGraw* Court reiterated that "[o]ffense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *Id.* at 135.

Once again, MCL 777.37(1)(a) calls for the assessment of 50 points when "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered *during the offense*[.]" (Emphasis added.) Defendant seizes on the language "during the offense" in arguing that a court can only take into consideration conduct occurring during the sentencing offense for purposes of scoring OV 7. It does appear that the "during the offense" language found in OV 7 modifies all the preceding language in MCL 777.37(1)(a), thereby requiring us to focus solely on conduct occurring during the CSC-I offense. Regardless, even if OV 7 did not contain language that expressly limits the judge's consideration to conduct that occurred during the sentencing offense, OV 7 certainly does not specifically provide that a sentencing court may look outside the sentencing offense to past criminal conduct in scoring OV 7. Therefore, under *McGraw* and *Sargent*, the trial court here was only permitted to consider conduct that occurred during the criminal offense on February 24, 2013, for purposes of scoring OV 7.

It is clear that the trial court assessed 50 points for OV 7 in light of conduct engaged in by defendant throughout the two-year course of the sexual abuse, instead of confining its examination to conduct occurring during the sexual assault on February 24, 2013, which was the only criminal offense to which defendant pleaded no contest. Defendant's conduct that

allegedly took place before the sexual assault on Feb-
ruary 24, 2013, regardless of its deplorability, did not
relate forward to the sentencing offense; the prosecu-
tion, in negotiating the plea bargain, had chosen to
dismiss charges related to the alleged numerous crimi-
nal offenses of sexual assault occurring before Febru-
ary 24, 2013. The record is such that it is impossible to
discern whether one or more, or none, of the horrific
acts relied on by the trial court in scoring OV 7 took
place on February 24, 2013. Therefore, we cannot
conclude that a preponderance of the evidence sup-
ported the 50-point score.[5]

We find it necessary to respond to some of the
criticisms expressed by the dissent. The central theme
of the dissent is that the Supreme Court in *McGraw*
and *Sargent* rejected a narrow approach that would
only allow contemplation of conduct occurring during
the sentencing offense in the scoring of a variable,

---

[5] We note that the trial court assessed 50 points for OV 7 solely on the
basis of sadistic behavior, not on the basis of torture or that defendant's
conduct was designed to substantially increase the victim's fear and
anxiety. It would not be appropriate for this Court to consider whether
defendant's conduct was designed to substantially increase the victim's
fear and anxiety. See *Anspaugh v Imlay Twp*, 480 Mich 964 (2007)
(vacating this Court's judgment because the panel "engaged in appellate
fact-finding"). "A *trial court* determines the sentencing variables by
reference to the record," *People v Osantowski*, 481 Mich 103, 111; 748
NW2d 799 (2008) (emphasis added), not this Court. See *People v Burns*,
494 Mich 104, 109 n 10; 832 NW2d 738 (2013) (recognizing that
fact-finding authority is vested in the trial courts and that the Court of
Appeals may not invade that authority). Although we acknowledge the
"right result—wrong reason" doctrine cited by our dissenting colleague,
which would seemingly indicate a conclusion that sadism was an
improper or wrong reason to assess OV 7 at 50 points, we do not believe
that the doctrine can be employed to allow impermissible appellate
fact-finding. Regardless, the record is equally lacking in evidence that
defendant's conduct solely in relation to the offense that occurred on
February 24, 2013, to which defendant pleaded guilty, was designed to
substantially increase the victim's fear and anxiety.

instead opting in favor of a broader approach allowing consideration of conduct simply "relating" or "pertaining" to the sentencing offense, which would not necessarily preclude, despite chronological distinctions, examining prior conduct or offenses. In *McGraw*, 484 Mich at 124, the Court noted that the defendant was arguing for an approach in which "only conduct occurring during the offense of which the defendant was convicted may be considered." On the other hand, the prosecution argued that a transactional approach should be used, examining "a continuum of the defendant's conduct . . . , which can extend far beyond the acts that satisfy the elements of the sentencing offense." *Id.* The *McGraw* Court then observed that in *Sargent*, "[w]e stated that usually 'only conduct relating to the offense may be taken into consideration when scoring the offense variables.' " *McGraw*, 484 Mich at 124, quoting *Sargent*, 481 Mich at 349 (quotation marks omitted). The dissent in this case emphasizes this language, treating it as a rejection of the *McGraw* defendant's argument that only conduct occurring during the sentencing offense may be considered. The fact is, however, that the Court was agreeing with the defendant's position and rejecting the prosecution's transactional-approach argument. It is abundantly clear that, when read in context, the Supreme Court's reference to conduct "relating" to the sentencing offense meant that consideration was limited to conduct occurring during the sentencing offense. The dissent improperly construes the use of the term "relating" as opening the door to contemplation of prior and subsequent conduct going beyond the sentencing offense.

The *Sargent* Court stated, "That the general rule is that the relevant factors are those relating to the offense being scored is further supported by the fact

that the statutes for some offense variables specifically provide otherwise." *Sargent*, 481 Mich at 349. In applying this rule, the Court held:

> [W]hen scoring OV 9, only people placed in danger of injury or loss of life when the sentencing offense was committed (or, at the most, during the same criminal transaction) should be considered.
>
> In the instant case, the jury convicted defendant only of sexually abusing the 13-year-old complainant. It did not convict him of sexually abusing the complainant's sister. Furthermore, the abuse of the complainant's sister did not arise out of the same transaction as the abuse of the complainant. For these reasons, zero points should have been assessed for OV 9. [*Id.* at 350-351.]

Accordingly, the Court was clearly limiting its consideration to conduct and events occurring during the sentencing offense. Indeed, that is how the *McGraw* Court interpreted *Sargent*, stating that in *Sargent* "we held that offense variable (OV) 9 in the sentencing guidelines cannot be scored using uncharged acts that *did not occur during the same criminal transaction as the sentencing offense*." *McGraw*, 484 Mich at 121-122 (emphasis added; citation omitted). Speaking of *Sargent* later in its opinion, the *McGraw* Court noted that "it was clear that the defendant's conduct [in *Sargent*] did not occur during the same criminal transaction." *Id.* at 126 n 17.

Accordingly, while *Sargent* held that the Legislature intended that the scoring of the offense variables be offense-specific, the Court in *McGraw* went one step further, characterizing its ruling as "decid[ing] whether the offense variables should be scored solely on the basis of conduct occurring during the sentencing offense or also using conduct occurring afterward." *Id.* at 122. As quoted earlier, the *McGraw* Court specifically held that "a defendant's conduct after an offense

is completed *does not relate back* to the sentencing
offense for purposes of scoring offense variables unless
a variable specifically instructs otherwise." *Id*. (empha-
sis added). Contrary to the principle established in this
plain language, the dissent in this case concludes that
prior conduct can relate forward to the sentencing
offense. The *McGraw* Court rejected the argument
"that the Legislature intended sentencing courts to
consider a defendant's entire criminal transaction
when scoring the variables." *Id*. at 128. And it con-
cluded "that the Court of Appeals erred by considering
the entire criminal transaction and using defendant's
conduct after the crime was completed as the basis for
scoring OV 9." *Id*. at 133. The Court emphasized that
the sentencing variable at issue "must be scored . . .
solely on the basis of defendant's conduct *during* the
[sentencing offense]." *Id*. at 134 (emphasis added). In
the case at bar, the dissent is effectively arguing in
favor of a transactional or multitransactional ap-
proach, examining the full history of sexually assault-
ive conduct committed by defendant against the victim
in previous criminal transactions, even though that
conduct did not occur during the sentencing offense.
*McGraw* and *Sargent* do not allow for that approach.
Furthermore, outside the framework of *McGraw* and
*Sargent*, MCL 777.37(1)(a) expressly limits the sen-
tencing court to consideration of whether a victim was
treated with sadism "during the offense[.]"

The dissent, citing *McGraw*, 484 Mich at 129, states
that "[t]he holding in *McGraw* was not that conduct
that occurred at a different time from the sentencing
offense could *never* be considered when scoring guide-
lines for that offense, but rather that any such conduct
must *pertain to* the sentencing offense unless the
offense variable specifies otherwise." We have closely
reviewed page 129 of the *McGraw* opinion and find no

support whatsoever for this proposition, and we stand by the quoted materials from *McGraw* referred to earlier in this opinion and our interpretation thereof. In *McGraw*, 484 Mich at 129, the Court did observe:

> This does not mean that transactional conduct may never influence a defendant's sentence. Such a result would frustrate the Legislature's intention of having the guidelines promote uniformity in sentencing. Nothing precludes the sentencing court from considering transactional conduct when deciding what sentence to impose within the appropriate guidelines range and whether to depart from the guidelines recommendation.

We are not holding that defendant's conduct occurring before the sentencing offense was committed cannot be considered in a sentencing departure or in imposing defendant's minimum sentence within the guidelines range. Indeed, the trial court may have sentenced defendant at the very top end of the guidelines range precisely because of the history of sexual abuse. This passage from *McGraw* simply does not suggest that a court may consider preoffense conduct that merely "pertains" to the sentencing offense in scoring a variable, such as OV 7, that is limited to contemplation of conduct occurring during the sentencing offense.[6]

The dissent suggests that *McGraw* is distinguishable because it dealt with postoffense conduct and not preoffense conduct. It is clear to us, however, that the analytical framework constructed by our Supreme Court in *McGraw* applies regardless of whether a court

---

[6] The *McGraw* Court would not even allow consideration of conduct amounting to fleeing and eluding that occurred directly following the completion of the sentencing offense. *McGraw*, 484 Mich at 131-135. We therefore find it plain that taking into consideration conduct occurring on different days over a two-year period does not survive scrutiny under *McGraw*.

is addressing conduct occurring before or after the sentencing offense; the touchstone is that the conduct to be considered in scoring the variable must have occurred during the commission of the sentencing offense unless the offense variable statute expressly says otherwise.

Finally, the dissent, relying on research and data concerning ongoing sexual abuse of children, makes an impassioned plea regarding the necessary interrelationship or interconnection between the sentencing offense and the prior acts of sexual abuse, precluding examination of the sentencing offense in a vacuum. We do not disagree with the dissent's information regarding the victims of child sexual abuse and their abusers, nor do we reject the dissent's general theory about abusive relationships; rather, we merely disagree that such matters are relevant under *McGraw* and *Sargent* for purposes of scoring OV 7 in this case. We note that despite the fact that OV 7 does not allow consideration of the full history of acts of sexual abuse, OV 13 was assessed at 50 points, the highest score possible, because the sentencing offense "was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years of age." MCL 777.43(1)(a). OV 13 requires consideration of "all crimes within a 5-year period, including the sentencing offense, . . . regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). Thus, defendant's past alleged sexual abuse of the victim is relevant and has a bearing on his sentence.

We have pondered the proposition that assessing 50 points under MCL 777.37(1)(a) was perhaps proper on the basis that the act of digital-vaginal penetration occurring on February 24, 2013, had to be examined in context by taking into account the entire history of

abuse, i.e., the sexual penetration, in and of itself, was a sadistic act given everything else defendant had allegedly done to the victim. However, that analysis would necessitate consideration of preoffense conduct for which defendant did not plead guilty or no contest and that simply is not permissible under MCL 777.37(1)(a), *Sargent*, and *McGraw*.

Reversed and remanded for resentencing. We do not retain jurisdiction.

SERVITTO, J., concurred with MURPHY, J.

RONAYNE KRAUSE, P.J. (*dissenting*). I respectfully dissent. I do not read the applicable statutory or caselaw as narrowly as does the majority, and I further conclude that even if the majority correctly reads that law, the majority misunderstands the facts. Either way, I would affirm.

As the majority explains, defendant pleaded no contest to digitally penetrating his then 13-year-old stepdaughter in exchange for a sentence within the sentencing guidelines. Defendant was, notably, *not* charged with any of the prior sexual, physical, and emotional abuse he inflicted on his stepdaughter over a period of approximately two years. The instant appeal specifically concerns the trial court's assessment of 50 points under Offense Variable (OV) 7. Fifty points should be assessed under OV 7 if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense[.]" MCL 777.37(1)(a). At issue is solely whether defendant's egregious conduct may be used to assess points under OV 7 in light of the record evidence and our Supreme Court's statement that "[o]ffense vari-

ables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *People v McGraw*, 484 Mich 120, 135; 771 NW2d 655 (2009).[1]

Factually, the trial court relied in significant part on a police report. The police officer's summary of the victim's interview states that the victim was 13 years old at the time of the specific assault of which defendant was convicted and that defendant had sexually abused her at least twice a week for the prior "couple of years." The last sexual assault occurred on February 24, 2013; defendant pleaded no contest specifically to that last assault. In the police report, and in an attached written statement by the victim, reference was made to an incident in which defendant put a BB gun to the victim's head and threatened to kill her if she did not perform a sexual act. The police report also alluded to instances in which defendant pulled the victim's hair, struck her buttocks, threatened her life if she said anything about the sexual abuse, and hit her with a belt buckle, resulting in bruises on numerous occasions. In the victim's statement, it is clear that defendant had threatened her life "many times" and that to the extent to which she subsequently did not resist, she acted out of fear. Medical documents attached to the police report indicated that defendant once bit the victim on one of her breasts, leaving a scar. The trial court also considered defendant's presentence investigation report, which essentially echoed the police report information.

---

[1] *McGraw* dealt with OV 9, which simply states, "Offense variable 9 is number of victims." MCL 777.39(1). It also dealt with conduct that occurred after the date of the offense of which the defendant was convicted. *McGraw*, 484 Mich at 122.

When reviewing a challenge to a sentencing guidelines score, we review for clear error whether the trial court's factual findings are supported by a preponderance of the evidence, and we review de novo as a question of law whether those factual findings properly justify the guidelines scores at issue. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). We defer to the trial court's superior ability to observe and assess the credibility of the persons who, in contrast to the operation of this Court, actually appeared before it. See *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881). When calculating a defendant's minimum-sentence range under the sentencing guidelines, a court may consider all record evidence, including the contents of a presentence investigation report. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012).

"Sadism" is statutorily defined as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3). As our Supreme Court has explained, the terms "torture," "excessive brutality," and "conduct designed to substantially increase the fear and anxiety a victim suffered" are to be given their ordinarily understood meanings, and 50 points should be assessed if *any* such conduct occurred. *Hardy*, 494 Mich at 439-444. I believe that any conceivable argument to the effect that defendant inflicted anything less on the victim would be utterly illogical. Further, it would not take into account the particular dynamics of ongoing, serial abuse, either as a general matter or the specific abuse that occurred in this case.

In my opinion, the majority reads more into *McGraw* than our Supreme Court wrote. The holding in *McGraw* was not that conduct that occurred at a different time from the sentencing offense could *never* be considered when scoring guidelines for that offense, but rather that any such conduct must *pertain to* the sentencing offense unless the offense variable specifies otherwise. See *McGraw*, 484 Mich at 129. Indeed, our Supreme Court was urged to pronounce an approach restricting consideration to "only conduct occurring during the offense," but instead explained that consideration must be given to "conduct '*relating to* the offense . . . .' " *Id.* at 124, quoting *People v Sargent*, 481 Mich 346, 349; 750 NW2d 161 (2008). While perhaps a subtle distinction, I think it a highly significant one. Furthermore, strictly speaking, *McGraw* was concerned with conduct that occurred *after the completion of the sentencing offense*. *McGraw*, 484 Mich at 122, 132-135. There is no possibility of any subsequent conduct being used to score OV 7 in the instant matter.

The majority points out that our Supreme Court explicitly held that sentencing courts could consider "transactional conduct when deciding what sentence to impose within the appropriate guidelines range and whether to depart from the guidelines recommendation." *McGraw*, 484 Mich at 129. The majority then goes on to discuss *conduct unrelated to the sentencing offense*, which entirely misses the point. Again, our Supreme Court explicitly *rejected* a "conduct occurring during the offense" approach in favor of a "conduct relating to the offense" one. Furthermore, our Supreme Court clearly regarded transactional conduct as something else entirely, which makes perfect sense in the context of a defendant who committed a series of offenses as part of a single transaction, in which case it

would be unsurprising that conduct relating to only one of those offenses could not be used to compute the OV score for a different offense. What the majority overlooks is that there is absolutely no reason why conduct cannot relate to multiple offenses and that our Supreme Court expressly rejected the notion that such related conduct must chronologically overlap the sentencing offense if it is to be used to determine an OV score.

Our Supreme Court has explained that the proper delineation between conduct that may be considered and that which may not be considered is not strictly chronological. Rather, the delineation is whether the conduct in question pertains to the sentencing offense, which is an inherently fact-specific inquiry. I believe that the majority finds in our Supreme Court's opinion a neat, simple, and easy-to-apply bright-line rule that was never articulated nor intended and that, in this case, is neither proper nor just. Our Supreme Court could easily have stated that conduct that occurs at a different time from the sentencing offense may not serve as a basis for assessing OV points unless a statute provides otherwise, but did not.

That being said, scorable conduct may well usually overlap chronologically with the sentencing offense. An observed trend, however, is not a rule, and statistics reveal nothing about specific cases. As applied to OV 7, I conclude that in light of our Supreme Court's analysis in *McGraw* and the plain language of MCL 777.37, whether points may be assessed depends not necessarily on when the conduct at issue occurred, but on the extent to which that conduct *pertains to the sentencing offense*. Nothing in *McGraw* dictates that such conduct must occur at the same time as the sentencing offense or must pertain to *only* the sentencing offense.

Importantly, this case does not involve simple facts and a straightforward timeline of discrete events. It has long been recognized that "there is general agreement among experts that reactions of a victim of sexual assault vary quite significantly from those of a victim of the 'average' crime." *People v Beckley*, 434 Mich 691, 715-716; 456 NW2d 391 (1990) (opinion by BRICKLEY, J.). As a general matter, in situations involving serial sexual or physical abuse, the perpetrators inherently need to maintain control over their victims, often through some manner of threat or manipulation *intended to affect the victim's future behavior*.[2] In any kind of ongoing interpersonal relationship, it simply makes no sense to pretend that one interaction is irrelevant to subsequent interactions, and this is *especially* so in familial relationships or any other relationship involving authority, control, or influence over another person.[3] Situations involving serial acts of

---

[2] See, e.g., National Center for Prosecution of Child Abuse, *Investigation and Prosecution of Child Abuse, Third Edition* (Thousand Oaks: 2004), pp 13-15; Hamby & Grych, *The Complex Dynamics of Victimization: Understanding Differential Vulnerability Without Blaming the Victim*, to appear in Cuevas & Rennison, eds, *The Wiley Handbook on the Psychology of Violence* (West Sussex: John Wiley & Sons, Ltd, 2016), pp 66-81; 1 Royal Commission into Institutional Responses to Child Sexual Abuse, *Interim Report* (2014), p 124.

[3] For example, intimate partner violence is overwhelmingly chronic. See, generally, Rand & Saltzman, *The Nature and Extent of Recurring Intimate Partner Violence Against Women in the United States*, 34(1) J Comp Fam Stud 137 (2003). Controlling behaviors are, unsurprisingly, associated with the infliction of physical or sexual violence within relationships. Catallozzi et al, *Understanding Control in Adolescent and Young Adult Relationships*, 165(4) Archives of Pediatrics & Adolescent Med 313 (2011). Furthermore, experiencing violence physically alters young brains to become more sensitive to further threats and more prone to future psychological problems, much like soldiers exposed to combat stresses. McCrory et al, *Heightened Neural Reactivity to Threat in Child Victims of Family Violence*, 21(23) Current Biology R947 (2011). It should be obvious that *any* hostile environment from which a person

abuse over time are not mere transactions, but are deeply and fundamentally interconnected. To regard the individual acts as discrete and separable ignores both the research and common sense. Acts of extraordinary brutality or terror during any particular act of abuse inherently pertain to future acts of abuse perpetrated against the same victim.

Nowhere has the Legislature explicitly stated that scorable conduct must have occurred during the offense. Rather, the statute requires that 50 points be assessed if the defendant engaged in sadism, torture, excessive brutality, or other conduct designed to increase fear and anxiety during the offense. Furthermore, nowhere has the Legislature required that such conduct pertain to *only* the sentencing offense, to the exclusion of others. Defendant unquestionably engaged in conduct designed to increase the victim's fear and anxiety during the sentencing offense.[4] Because that conduct pertained to the sentencing offense and met the statutory requirements for assessing points

cannot escape is, for all practical purposes, little more than a form of torture, with the net effect of causing a progressive depletion of that person's ability to cope. Involvement, as either a victim or a perpetrator, in any individual offense within the context of such ongoing abuse is intrinsically and qualitatively different from involvement in a criminal act that actually can be severed from other criminal acts. I am concerned by the majority's dismissal of these facts as some kind of emotional plea.

[4] In my view, defendant engaged in conduct for the purpose of increasing the fear and anxiety the victim suffered during the offense beyond what such a victim might ordinarily be expected to suffer during that offense. See *Hardy*, 494 Mich at 439-443. This, of course, may be inferred from circumstantial evidence. *Id.* at 440 n 26. While the majority asserts that it is not appropriate to consider whether defendant's conduct was designed to substantially increase the victim's fear and anxiety, appellate courts generally do not reverse when the trial court reached the right result for a wrong reason. *People v Ramsdell*, 230 Mich App 386, 406; 585 NW2d 1 (1998). Accordingly, I would affirm defendant's sentence.

under OV 7, I conclude that the trial court properly
scored OV 7 at 50 points.[5] I would, therefore, affirm the
trial court.

---

[5] I appreciate that in light of our Supreme Court's recent decision in
*People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), facts that
increase a defendant's minimum sentence range under the guidelines
must be admitted by the defendant or found by a jury. The instant case
features a situation seemingly unaddressed by *Lockridge*, in which
defendant did not, strictly speaking, personally admit facts directly to
the sentencing court. However, defendant expressly agreed to the trial
court's reliance on the police report for the no-contest plea-taking
procedure and has not made any contention that the trial court's *factual*
findings were incorrect or improper. I would consider his acceptance of
this procedure as an admission, and I perceive no constitutional infir-
mity under *Lockridge*.